IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **KIA COWAN**, individually, and on behalf of all others similarly situated,<br><br>　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>**LINCARE INC.**,<br><br>　　　　　　　　Defendant. | COLLECTIVE AND CLASS ACTION<br><br>JURY TRIAL DEMANDED<br><br>No.:<br>Hon. |

## COLLECTIVE AND CLASS ACTION
## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Kia Cowan, individually and on behalf of all others similarly situated (hereinafter, "Plaintiff"), by and through her attorneys, hereby brings this Collective and Class Action Complaint against Defendant, Lincare Inc. (hereinafter, "Defendant"), and states as follows:

## INTRODUCTION

1.　　This is a collective and class action that arises out of Defendant's systemic failure to compensate its employees for all hours worked, including overtime hours worked at the appropriate overtime rate, in willful violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq.,* Nevada Wage and Hour Law, NRS §§ 608.005, *et seq.* ("Nevada Wage Act")., and common law.

2.　　Plaintiff and the putative collective members consist of current and former call center agents or similar positions ("Agents"), who were compensated on an hourly basis. Throughout the relevant period, Defendant

maintained a corporate policy and practice of failing to compensate its Agents for all pre-, mid-, and post-shift off-the-clock work.

3.    Regardless of the specific job title, all Agents: (1) are paid on an hourly basis; (2) are classified as non-exempt employees; (3) use the same timekeeping system(s); (4) use many (if not all) of the same computer programs; (5) are subject to the same relevant timekeeping and attendance policies; and (6) have the primary job duty of providing assistance to Defendant's customers.

4.    In particular, Defendant required its Agents to begin work prior to their scheduled shifts and perform a number of off-the-clock tasks that were integral and indispensable to their jobs, including booting up computers, logging into numerous software programs, and logging into phones. The Agents only "clocked in" and received compensation *after* this preliminary work was completed, though they were required to perform this work in order to be "phone ready" when their scheduled shifts began.

5.    An Agent's failure to be "phone ready" when the scheduled shift began (or when the shift resumed after meal periods), could result in poor schedule adherence scores, poor performance evaluations, warnings, discipline, and possibly termination.

6.    In addition to this pre-shift work, Defendant also required its Agents to perform unpaid mid-shift work during their unpaid meal periods.

The Agents' duties performed during their unpaid meal periods included similar login procedures. 29 C.F.R. § 785.19(a).

7.    Defendant also required its Agents to perform unpaid post-shift work after "punching out," which included tasks related to Defendant's extensive computer log-out and shut-down processes and procedures.

8.    The Agents routinely worked forty (40) hours or more per week before accounting for their off-the-clock work. When the off-the-clock work is included, the Agents, even those Agents who were scheduled and paid for only forty (40) hours per week, actually worked over forty (40) hours per week without the required overtime premium for hours worked over forty (40) per week.

9.    Defendant, through its managers, had actual and constructive knowledge that its Agents were completing this off-the-clock work without compensation. Nevertheless, Defendant suffered or permitted, and in fact trained and required, its Agents to complete this unpaid work.

10.    The U.S. Department of Labor recognizes that call center jobs, like those held by Defendant's Agents, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry. One of those abuses, which is occurring in this case, is Defendant's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday."

*See* **Exhibit A**, DOL Fact Sheet #64: Call Centers under the Fair Labor Standards, available at: *https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers.*

11.    The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails." See *Id.*, at p. 2.  Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id.*

12.    Defendant's practice of failing to compensate its Agents for all hours worked violated the Agents' rights under the FLSA.

13.    Plaintiff brings this action for violation of the FLSA as a collective action, pursuant to Section 216(b) of the FLSA, on behalf of the following Collective:

> ***All current and former hourly call center agents who worked for Defendant at any time during the past three years.***

14.    Defendant is liable for its failure to pay it Agents for all work performed, and at the appropriate overtime rate for hours worked in excess of forty (40) per week.

15.    Agents who elect to participate in this FLSA collective action seek compensation for all off-the-clock, pre-, mid-, and post-shift work performed for Defendant, an equal amount for liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

16.    This Court has subject matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raise a federal question under 29 U.S.C. § 201, *et seq*.

17.    This Court has diversity jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendant reside in different states.

18.    Additionally, this Court has personal jurisdiction over Plaintiff's FLSA claim pursuant to 20 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

19.    Defendant's annual sales exceed $500,000, and Defendant has more than two employees; thus, the FLSA applies in this case on an enterprise basis.  Defendant's employees, including Plaintiff and the Agents, engage in interstate commerce or in the production of goods for commerce; therefore, they are also covered by the FLSA on an individual basis.

20.    The Court has supplemental jurisdiction over Plaintiff's state law

claims pursuant to 28 U.S.C. § 1367 because the state law claims and the federal claims are so closely related that they form part of the same case or controversy under Article III of the United States Constitution.

21.    The Court has personal jurisdiction over Defendant because Defendant conducts business within the state of Florida and maintains its principal place of business in the state of Florida.

22.    Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §1391 (b) and (c) because the Defendant conducts business in this District, and a substantial portion of the events that give rise to the Plaintiff's claims occurred in this District.

23.    All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

## **PARTIES**

24.    Plaintiff Kia Cowan is a resident of Las Vegas, Nevada.  Plaintiff worked for Defendant as an Agent from approximately November 2022 until March 2023.  Defendant compensated Plaintiff for her services as an Agent in the form of an hourly wage, most recently at the rate of $13 per hour.  Plaintiff Hogg signed a consent form to join this collective action lawsuit, *Exhibit B*.

25.    Additional putative Collective members were or are employed by Defendant as Agents in Las Vegas and potentially other states during the past

6

three years and their consent forms will also be filed in this case.

26.     According to Defendant's website, Lincare Inc., "[h]eadquartered in Clearwater, FL," is the "leading respiratory supplier in the country, serving approximately 1.8 million patients from the comfort of their homes. We're transforming how respiratory care is delivered in the home to provide comfort, convenience, and the utmost in personalized care."[1]

27.     Defendant Lincare Inc. is incorporated in the State of Delaware with its principal place of business located at 19387 US 19 N, Clearwater, FL 33764.

28.     Defendant maintains a registered office in Clearwater, FL and its registered agent can be served as follows: CT Corporation System, 1200 S. Pine Island Road, Plantation, FL 33324.

29.     Upon information and belief, Defendant employed hundreds of Agents – including Plaintiff – within the past three years and across the United States to assist its customers with their customer service needs.

## GENERAL ALLEGATIONS

30.     Throughout their employment with Defendant, Plaintiff and other Agents were pressured to work substantial amounts of uncompensated, off-the-clock time as part of their job duties.

---

[1]    *See*    https://www.lincare.com/en/why-lincare/about-lincare    (Last    visited    on 07/19/2023).

31.    Defendant employs hundreds of Agents who work remotely from their homes, providing customer, sales, and order support to Defendant's customers throughout the United States.

32.    Defendant has employed hundreds of agents over the past three years as part of its remote work to handle customer phone calls concerning various issues.

33.    Defendant compensated its Agents on an hourly basis and classified them as non-exempt employees under the FLSA.

34.    Upon information and belief, Defendant maintains documents that demonstrate the promised hourly wage for each Agent, including but not limited to: offer letters, paystubs, and/or other payroll records.

35.    Defendant's Agent position typically had schedules that require employees to work at least eight (8) hours per day (with a thirty (30) minute unpaid meal period), on average five (5) days each week, and up to forty (40) hours or more in a workweek.  However, in some workweeks, Defendant's Agents work less than forty (40) hours in a week and in other weeks they work more than forty (40) hours.  If Defendant's Agents strictly adhere to Defendant's baseline forty (40) hour schedule, the Agent schedule results in Agents working overtime on a weekly basis.

36.    Throughout their employment with Defendant, Plaintiff and the other Agents' job duties included fielding inbound calls and performing a wide

range of support services to those callers with questions.

37.    Once hired, Defendant provides all Agents with training on, *inter alia*, how to carry out their day-to-day job duties, including how to load and log into their computer programs at the beginning of the day, and how to log out at the end of the day; how to track their time; the importance of attendance and schedule expectations; and Defendant's policies related to each topic. The training Defendant's Agents receive is substantially, if not entirely, the same and all Agents are subject to the same disciplinary policies.

38.    Plaintiff and other similarly situated Agents are instructed to be "phone ready" the moment their scheduled shift starts. This requires Defendant's Agents to be logged in and have loaded all of their essential work-related computer programs and applications at the start of their shift so they can be prepared to take calls the moment their shift begins. An Agent's failure to be "phone ready" could result in poor performance evaluations, warnings, discipline, and possibly termination. Thus, Defendant forces its Agents to perform the boot-up and login process before clocking into Defendant's timekeeping system.

39.    All of Defendant's Agents use the same or similar computer networks, or software, programs, and applications in the course of performing their job responsibilities. These programs and applications are an integral and important part of the Agents' work and they cannot perform their jobs without

9

them.

40.    Once training is completed and in order to perform their job duties, Plaintiff and all other Agents are required to boot up and log into various computer networks, software programs and applications, in order to access information necessary to perform their job functions.  However, Plaintiff and all other Agents are instructed to not actually "clock in" for their shifts until after the computer boot-up and login process is complete or nearly complete.

41.    Defendant has similar policies which prevented Plaintiff and all other Agents from "clocking in" or "out" during their lunch break, or after their scheduled shifts are completed.

42.    Plaintiff and all other similarly situated Agents are also trained or instructed to "clock out" before closing all work applications and systems to make certain they are "clocked out" the moment they are done fielding calls.

43.    The pre-, mid-, and post-shift off-the-clock time Plaintiff and all other Agents spend booting up, logging in, and logging off of their computers directly benefits Defendant and is integral and indispensable to the Agents' job responsibilities.

44.    Despite knowing Plaintiff and all other Agents perform this pre-, mid-, and post-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

45.    Defendant possesses, controls, and/or has access to information

and electronic data indicating the times Plaintiff and all other Agents boot up and log into their computers each day, along with the time they log into their telephone systems.

46.     Because Defendant requires its Agents to perform pre-, mid-, and post-shift work off-the-clock, the hours tracked in Defendant's timekeeping system are inaccurate representations of the total amount of time Agents spend working for Defendant.  Thus, the hours reflected on the Agents' paystubs are also inaccurate representations of the hours they worked.

47.     Despite its ability to track the amount of time Plaintiff and other Agents spend in connection with the pre- and mid-shift boot-up and login processes, as well as the post-shift shutdown process, Defendant failed to pay Plaintiff and other Agents for the off-the-clock work they performed each shift, thus breaching its contracts with its Agents.

48.     Plaintiff and similarly situated Agents regularly worked overtime and non-overtime hours for which they were not paid.

49.     During the weeks that Agents do not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices is a deprivation of straight-time wages, in breach of Defendant's contracts with its Agents.

A. **Pre-Shift Off-the-Clock Work**

50.    Like most call centers, Defendant maintained detailed attendance and schedule adherence policies and used them to evaluate its Agents' job performance.

51.    Defendant uses its attendance/schedule adherence policies to pressure its Agents into arriving early and working off-the-clock so they can be "phone ready" at the start of their shifts.

52.    Throughout their employment with Defendant, Plaintiff and other Agents were pressured to work substantial amounts of uncompensated, off-the-clock time as part of their job duties.

53.    Upon arriving to their home computer, Defendant's Agents were trained and required to follow a specific protocol to start up and log into the company's computer network and numerous software programs in order to access the necessary information to perform their work.

54.    The pre-shift boot-up and login process generally consisted of the following steps:

a.  The Agents turned on or woke up their computer;

b.  The Agents next logged into the Citrix application;

c.  The Agents would then log in to the Lite application,

d.  Next, Agents would open and log in to AS 400;

e. Next, Agents opened Outlook, check and respond to company emails, and ensure all of their systems were operational;

f. Agents would then "punch in" to their Avaya phone system and start receiving customer calls.

55.     The boot-up and login process described above took substantial time on a daily basis, ranging from twenty (20) to thirty (30) minutes per shift, or more, depending on how fast/slow the computers and programs were operating.

56.     Agents were required to complete each of these tasks prior to "punching in," as Agents could not be "phone ready" until these tasks were complete.

57.     Defendant's Agents did not actually "clock in" for their shifts until the start of their scheduled shifts; meaning that Plaintiff and all other Agents worked off-the-clock for at least twenty (20) to thirty (30) minutes (or more) before each shift for which they were never compensated.

58.     If Agents arrived immediately prior to their scheduled shifts, they were in danger of clocking in late if they could not complete the required pre-shift work necessary to be "phone ready" when their scheduled shifts began, and they would therefore receive a tardy on their records and poor schedule adherence scores.

59.     Because Defendant's Agents typically worked scheduled shifts of at least forty (40) hours per week, their required pre-shift work was nearly always overtime work, compensable at 1.5 times their regular rate of pay.

60.     Defendant had express and constructive knowledge that its Agents began the pre-shift boot-up and login process while off-the-clock in order to make sure they were "phone ready" and "clocked in" on time.

61.     Defendant's policies and practices discouraged its Agents from recording all time worked.

62.     Despite having express and constructive knowledge of its Agents' pre-shift off-the-clock work, Defendant failed to exercise reasonable diligence to determine the amount of unpaid overtime owed to its Agents.

63.     Defendant's Agents are not compensated for all of this time because Defendant prohibits Agents from clocking into its timekeeping software before the start of their scheduled shift.

64.     The pre-shift off-the-clock work performed by Agents directly benefits Defendant, and is integral and indispensable to their job duties and responsibilities as Agents.

## B. Mid-Shift Off-the-Clock Work

65.     Defendant provided its Agents with a scheduled thirty (30) minute unpaid meal period during each work shift.

66.     However, Defendant also required its Agents to perform off-the-

14

clock work during these unpaid meal periods, including returning from the thirty (30) minute meal period approximately three (3) to five (5) minutes early in order to have enough time to log back in to Defendant's programs and software prior to resuming their shifts. This process was similar to the pre-shift login process described above (albeit abbreviated), and this time went unpaid.

67.    According to the U.S. Department of Labor, "[r]est periods of short duration, usually 20 minutes or less, are common in the industry (and promote employee efficiency), and must be counted as hours worked. *Bona fide* meal periods (typically 30 minutes or more) generally need not be compensated as work time as long as the employee is relieved from duty for the purpose of eating a regular meal." (***Exhibit A***, Fact Sheet #64 at p. 2).

68.    The mid-shift off-the-clock time worked by Defendant's Agents directly benefitted Defendant and the process was an integral and indispensable part of the Agents' job responsibilities.

69.    Because Defendant's Agents typically worked scheduled shifts of at least forty (40) hours per week, their required mid-shift work was nearly always overtime work, compensable at 1.5 times their regular rate of pay.

70.    Defendant had express and constructive knowledge that its Agents took unpaid meal periods and that its Agents also performed mid-shift off-the-clock work during those unpaid meal periods in order to make sure they were

"phone ready" and "clocked in" on time for their shifts to resume.

71.    Despite having express and constructive knowledge of its Agents' mid-shift off-the-clock work, Defendant failed to exercise reasonable diligence to determine the amount of unpaid overtime owed to its Agents.

**C. <u>Post-Shift Off-the-Clock Work</u>**

72.    Pursuant to Defendant's policies, training, and direction, Plaintiff and all other Agents are required to "clock out" of Defendant's timekeeping system before closing all work applications and systems to make certain they are "clocked out" the moment they stop fielding calls.

73.    The off-the-clock post-shift process takes substantial time on a daily basis, with said time ranging from three (3) to five (5) minutes per shift.

74.    Defendant's Agents are also not paid for their post-shift off-the-clock work.

75.    The post-shift off-the-clock work Plaintiff and other Agents perform is compensable, directly benefits Defendant and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as Agents.

**D. <u>Defendant Benefitted from the Uncompensated Off-the-Clock Work</u>**

76.    At all relevant times, Defendant has required and directly benefited from the off-the-clock work performed by Plaintiff and all other

Agents in connection with pre-shift, mid-shift, post-shift activities described above.

77.    At all relevant times, Defendant has controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiff and all other Agents.

78.    At all relevant times, Defendant has been able to track the amount of time Plaintiff and all other Agents spend in connection with pre-shift, mid-shift, post-shift activities; however, Defendant has failed to do so and has failed to compensate Plaintiff and all other Agents for the off-the-clock work they performed.

79.    At all relevant times Plaintiff and all other Agents have been non-exempt hourly employees, subject to the requirements of the FLSA.

80.    At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and the other Agents in order to pressure them into performing with pre-shift, mid-shift, post-shift work off-the-clock.

81.    Defendant expressly trained and instructed Plaintiff and all other Agents to perform these off-the-clock work activities when they were not "clocked in" to Defendant's timekeeping system.

82.    Defendant instructed Agents to have all work applications and systems fully loaded before the start of their shifts, which takes them in the range of twenty (20) to thirty (30) minutes per day.

83.    Additionally, Plaintiff and all other Agents would have to return from their unpaid meal period early in order to have all work applications and systems fully loaded before resuming their shifts, which takes them in the range of three (3) to five (5) minutes per day.

84.    Similarly, at the end of the shift, Defendant instructed Agents to clock out before closing all work applications and systems to make certain they are "clocked out" the moment they stop fielding calls, which takes them in the range of three (3) to five (5) minutes per day.

85.    At all relevant times, Defendant's policies and practices deprived Plaintiff and the Agents of wages owed for off-the-clock pre-shift, mid-shift, and post-shift activities they performed. Because Defendant's Agents typically worked forty (40) hours or more in a workweek, Defendant's policies and practices also deprived them of overtime pay.

86.    Defendant is in possession of the payroll and timekeeping records that will illustrate exactly which weeks Plaintiff worked over forty (40) hours and exactly which weeks they worked under forty (40) hours.

87.    Defendant has known or should have known that the time spent by Plaintiff and other Agents in connection with the off-the-clock pre-shift, mid-shift, and post-shift activities is compensable under the law. Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that they have acted in good faith.

88.     Despite knowing Agents performed off-the-clock work before and during their shifts, Defendant failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

89.     Unpaid wages related to the off-the-clock work described herein are owed to Plaintiff at the FLSA mandated overtime premium of one and one-half the Plaintiff's regular hourly rate because Plaintiff worked in excess of forty (40) hours in a workweek.

### E. Plaintiff's Exemplary Workweeks

90.     Defendant paid Agents on a biweekly basis. As an example of two pay periods where Defendant failed to pay Plaintiff overtime for hours worked in excess of forty (40) hours (as mandated by the FLSA), Plaintiff provides her paystubs for the pay periods of December 19, 2022 – January 1, 2023 and January 2, 2023 – January 15, 2023:

**December 19, 2022 – January 1, 2023 and
January 2, 2023 – January 15, 2023 Pay Periods**

- Plaintiff worked more than 40 hours in a week at a rate of $13.00 per hour and upon information and belief was paid between $19.50 and $19.713 per hour in overtime.

- With pre-, mid, and post-shift off-the-clock work, Plaintiff should have been paid an additional 26 to 40 minutes per shift, or 260 minutes to 400 minutes per pay period, or more, at her overtime rate for each hour worked in excess of 40 in the overtime weeks.

**Exhibit C**, Cowan January 6, 2023 Exemplary Pay Statement; **Exhibit D**, Cowan January 20, 2023 Exemplary Pay Statement.

## FLSA COLLECTIVE ACTION ALLEGATIONS

91.    Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of herself and on behalf of:

> *All current and former hourly call center agents who worked for Defendant at any time during the past three years.*

(hereinafter referred to as the "FLSA Collective").  Plaintiff reserves the right to amend this definition if necessary.

92.    Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and other similarly situated Agents.

93.    Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside salespersons.

94.    Consistent with Defendant's policy and pattern or practice, Plaintiff and the members of the FLSA Collective are not paid the full premium overtime compensation they are due when they work beyond forty (40) hours in a workweek and are not paid any overtime in workweeks where their time cards reflect that they work slightly less than forty (40) hours, such as thirty-eight (38) to forty (40) hours, but actually work in excess of forty (40) hours.

95.    Defendant assigns and/or is aware of all of the work that Plaintiff and the members of the FLSA Collective perform.

96.    Upon information and belief, Defendant utilizes a centralized

payroll system which calculates overtime pay for all similarly situated employees in the same or similar manner.

97.    As part of its regular business practices, Defendant intentionally, willfully, and repeatedly engages in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective.  This policy and pattern or practice includes, but is not limited to:

    a.  Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, premium overtime wages for hours worked in excess of forty (40) hours per workweek;

    b.  Willfully failing to record all of the time that their employees, including Plaintiff and the members of the FLSA Collective, worked for the benefit of Defendant; and

    c.  Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, for off-the-clock work, such as the pre-shift boot-up process; the mid-shift boot-up process; and the time spent post-shift closing all applications, networks and programs and shutting down their computers.

98.    Defendant is aware or should be aware that federal law required it to pay Plaintiff and the members of the FLSA Collective overtime premiums (computed at their regular rate of pay) for hours worked in excess of forty (40) per workweek.

99.    Defendant's unlawful conduct has been and continues to be widespread, repeated, and consistent.

100.   A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C.

§ 216(b).  The employees on behalf of whom Plaintiff bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

101.  The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay.  The key issues – the amount of uncompensated pre- and post-shift off-the-clock work and the amount of technical downtime owed to each employee – does not vary substantially among the proposed FLSA Collective members.

102.  There are many similarly situated current and former Agents who have been underpaid in violation of the FLSA.  They would benefit from the issuance of a court-authorized notice of this lawsuit and the opportunity to join.

103.  Plaintiff estimates the FLSA Collective, including both current and former Agents over the relevant time period, includes hundreds of members.  The precise number should be readily available from a review of Defendant's personnel and payroll records.

104.  All of the estimations discussed herein will be refined after class discovery is completed.

## RULE 23 NEVADA CLASS ACTION ALLEGATIONS

105.   Plaintiff brings this action pursuant to Fed R. Civ. P. 23(b)(2) and

(b)(3) on behalf of the following putative Class ("Rule 23 Nevada Class"). The

Rule 23 Nevada Class is defined as follows:

> *All current and former Agents who worked for Defendant at any time in the State of Nevada during the applicable statutory period.*

Plaintiff reserves the right to amend this definition as necessary.

106.   *Numerosity:*  The members of the Rule 23 Nevada Class are so

numerous that joinder of all Rule 23 Nevada Class members in this case would

be impracticable.  Plaintiff reasonably estimates that there are dozens of Rule

23 Nevada Class members.  Rule 23 Nevada Class members should be easy to

identify from Defendant's computer systems and electronic payroll and

personnel records.

107.   *Commonality/Predominance:*  There is a well-defined community

of interest among Rule 23 Nevada Class members and common questions of

law and fact predominate in this action over any questions affecting individual

members of the Rule 23 Nevada Class.  These common legal and factual

questions, include, but are not limited to, the following:

a.   Whether the off-the-clock time worked by the Rule 23 Nevada Class members in connection with the activities described in this Complaint is compensable time;

b.   Whether the Rule 23 Nevada Class members are owed wages for

the off-the-clock time worked in connection with the activities described in the Complaint;

c. Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 Nevada Class member regular wages or minimum wage for each non-overtime hour worked;

d. Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 Nevada Class member overtime compensation for each overtime hour worked; and

e. Whether Defendant should be required to pay compensatory damages, attorneys' fees, penalties, costs, and interest for violating state laws and wage acts applicable to the members of the Rule 23 Nevada Class.

108. *Typicality*: Plaintiff's claims are typical of claims of the Rule 23 Nevada Class she seeks to represent in that Plaintiff and all other members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from Defendant's similar policies, practices, and course of conduct as all other Class members' claims and Plaintiff's legal theories are based on the same or similar facts.

109. *Adequacy*: Plaintiff will fully and adequately protect the interests of the Rule 23 Nevada Class and has retained national counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nevada Class.

110. *Superiority*: A class action is superior to other available methods

for the fair and efficient adjudication of the controversy, because, inter alia, it is economically infeasible for the Rule 23 Nevada Class Members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Nevada Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

111.   This case will be manageable as a Rule 23 Nevada Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

112.   Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

113.   Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nevada Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nevada Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

114.   Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> ***All current and former Agents who worked for Defendant at any time during the applicable statutory period.***

("Rule 23 Nationwide Class").   Plaintiff reserves the right to amend this definition if necessary.

115.   The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical.   Plaintiff reasonably estimates there are hundreds of Rule 23 Nationwide Class members.   Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

116.   There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class.   These common legal and factual questions, include, but are not limited to, the following:

   a. Whether the pre-shift time Rule 23 Nationwide Class members spend on startup and login activities each shift is compensable;

   b. Whether the mid-shift time Rule 23 Nationwide Class members spend on re-starting and login activities each shift is compensable;

    c.   Whether the post-shift time Rule 23 Nationwide Class members spend closing all programs, applications and networks is compensable;

    d.   Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract; and

    e.   Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

117.   Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that she and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

118.   Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff has retained counsel who are qualified and experienced in the prosecution of wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

119.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, inter alia, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages

at stake for each individual along with the fear of reprisal by their employer.

120.   This case will be manageable as a Rule 23 Class action.  Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

121.   Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.  *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

122.   Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
## VIOLATIONS OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq.* – FAILURE TO PAY OVERTIME

123.   Plaintiff incorporates by reference paragraphs 1-15, 30-49, 50-64, 65-71, 72-75, 76-89, and 90-103.

124.   At all times relevant to this action, Defendant was an employer under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq.*

125.   Defendant is engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

126.   At all times relevant to this action, Plaintiff and the proposed Collective members were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

127.   Plaintiff and the proposed Collective members, by virtue of their job duties and activities actually performed, are all non-exempt employees and were classified as such.

128.   Plaintiff and the proposed Collective members were either: (1) engaged in commerce; (2) engaged in the production of goods for commerce; or (3) employed in an enterprise engaged in commerce or in the production of goods for commerce.

129.   At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and proposed Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

130.   At all times relevant to this action, Defendant required Plaintiff and the proposed Collective members to regularly perform twenty (20) to thirty (30) minutes or more of pre-shift computer boot-up and login time per shift, three (3) to five (5) minutes or more mid-shift computer boot-up and login time per shift, and three (3) to five (5) minutes or more post-shift computer shut

29

down time per shift, but failed to pay these employees the federally mandated overtime compensation for all services performed.

131.  All of the off-the-clock worked performed by Plaintiff and the proposed Collective members could have easily been tracked and recorded by Defendant, but was not.

132.  In the aggregate, the amount of Plaintiff's and the proposed Collective members' uncompensated time amounted to hours of uncompensated time per week and, over the three-year statutory period, was not *de minimis*.

133.  In workweeks where Plaintiff and the proposed Collective members worked forty (40) hours or more, the uncompensated pre-, mid-, and post-shift off-the-clock work should have been paid at the federally mandated rate of 1.5 times each employee's regularly rate of pay.  29 U.S.C. § 207.

134.  Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have easily determined how long it took for its Agents to complete the pre-shift boot-up and log-in process and the mid-shift login process, as well as the post-shift shutdown process, and Defendant could have properly compensated Plaintiff and the proposed Collective members for the boot-up, login, and shutdown work they performed, but did not. Likewise, Defendant knew or could have easily determined how to perform the correct FLSA regular rate calculations.

135.   The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, Plaintiff and the proposed Collective members are entitled to their unpaid overtime, plus an additional equal amount in liquidated (double) damages, plus costs and reasonable attorneys' fees.

**COUNT II**
**(On Behalf of the Rule 23 Nevada Class)**
**VIOLATIONS OF THE NEVADA WAGE AND HOUR LAWS, NRS §§**
**608.005, *et seq.* ("NEVADA WAGE ACT")**

136.   Plaintiff incorporates by reference paragraphs 1-15, 30-49, 50-64, 65-71, 72-75, 76-89, and 104-112.

137.   The Nevada Wage Act, NRS §§ 608.005, *et seq.* provides that employees are entitled to minimum wages "for each hour the employee works," NRS § 608.016, and overtime compensation calculated at time-and-a-half of their regular rate of pay for each hour worked each week in excess of forty (40) or more than eight (8) hours in a day. NRS § 608.018.

138.   NRS § 608.140 provides that an employee has a private right of action for unpaid wages. *See Neville v. Eighth Judicial Dist. Court of Nev.*, 406 P.3d 499, 504 (Nev. 2017).

139.   At all times relevant to the action, Defendants were employers covered by the overtime and wage mandates of the Nevada Wage Act and the Rule 23 Nevada Class are employees entitled to the Nevada Wage Act's protections. *See* NRS §§ 608.010, 608.011.

140. The Nevada Wage Act entitles employees to compensation for every hour worked in a workweek. *See* NRS §§ 608.012, 608.016.

141. The Nevada Wage Act entitles employees to overtime compensation at a rate equal to 1.5 times the employee's regular rate of pay, for all hours worked in excess of forty (40) hours per week or eight (8) hours per day assuming the employee earns less than 1.5 times the Nevada minimum wages. *See* NRS § 608.018.

142. The Nevada Wage Act entitles employees to an uninterrupted and duty free meal period of at least a thirty minute duration when the scheduled work shift exceeds 8 consecutive hours of work. *See* NRS § 608.019.

143. Defendants violated the Nevada Wage Act by regularly and repeatedly failing to compensate the Rule 23 Nevada Class for the time spent on the work activities described in this Complaint.

144. Defendants' uniform policy and practice, as described above, was/is willful, intentional, unreasonable, arbitrary, and in bad faith.

145. As a result, the Rule 23 Nevada Class has and will continue to suffer loss of income and other damages. Accordingly, the Rule 23 Nevada Class is entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the Nevada Wage Act at an amount to be proven at trial.

**COUNT III**
**(On Behalf of the Rule 23 Nationwide Class)**
**BREACH OF CONTRACT**

146.   Plaintiff incorporates by reference paragraphs 1-15, 30-49, 50-64, 65-71, 72-75, 76-89, and 113-121.

147.   Defendant had binding and valid contracts with Plaintiff and the Rule 23 Nationwide Class to pay for each hour worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class performed on behalf of Defendant.

148.   Plaintiff and the Rule 23 Nationwide Class earned pre-established hourly rates in excess of $13 per hour.

149.   Plaintiff and the Rule 23 Nationwide Class accepted the terms of Defendant's contractual promises and performed under the contract by doing the job and carrying out the work performed each shift including the unpaid off-the-clock work that was required in connection with pre-, mid-, and post-shift work activities, described herein.

150.   By not paying Plaintiff and the Rule 23 Nationwide Class the agreed upon hourly wage for the off-the-clock work performed, Defendant breached its contracts with Plaintiff and the Rule 23 Nationwide Class.

151.   Plaintiff and the Rule 23 Nationwide Classes  remedies under the FLSA are inadequate in this case to the extent Defendant paid Plaintiff and the Rule 23 Nationwide Class more than the federally mandated minimum

wage of $7.25 per hour, but less than forty (40) hours per week (i.e., a pure "gap time" claim).

152.    Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and the Rule 23 Nationwide Class spent performing off-the-clock activities.

153.    As a direct and proximate result of Defendant's contractual breach, Plaintiff and the Rule 23 Nationwide Class were damaged in an amount to be determined at trial.

**COUNT IV**
**(On Behalf of the Rule 23 Nationwide Class)**
**UNJUST ENRICHMENT**

154.    Plaintiff incorporates by reference paragraphs 1-15, 30-49, 50-64, 65-71, 72-75, 76-89, and 113-121.

155.    The Count is pled in the alternative to Count IV *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

156.    At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

157.    Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

158.   By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

159.   Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

160.   Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

161.   Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

162.   Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

163.   As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Kia Cowan, on behalf of herself and on behalf of the putative FLSA Collective, the Rule Nevada 23 Class, and the Rule 23 Nationwide Class, requests judgment as follows:

a. Conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein;

b. Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all proposed Collective members, and permitting Plaintiff to send notice of this action to all those individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective members of their rights by law to join and participate in this lawsuit;

c. Certifying this action as a class action (for the Rule 23 Nevada Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's state law claims (Count II);

d. Certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's common law claims (Counts III and IV);

e. Designating Plaintiff Kia Cowan as the Representative of the FLSA Collective action, the Rule 23 Nevada Class, and the Rule 23 Nationwide Class, and undersigned counsel as Class/Collective counsel for the same;

f. Declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

g. Declaring Defendant's violations of the FLSA were willful;

h. Declaring Defendant violated the Nevada Wage and Hour Law, NRS §§ 608.005, *et seq.*, and that its violations were willful;

36

i.    Declaring Defendant breached its contracts with Plaintiff and the Rule 23 Nationwide Class by failing to pay Plaintiff and the Rule 23 Nationwide Class for each hour they worked at a pre-established (contractual) hourly rate;

j.    Declaring Defendant was unjustly enriched through its failure to pay Plaintiff and the Rule 23 Nationwide Class for the off-the-clock work discussed herein;

k.    Granting judgment in favor of Plaintiff and the proposed Collective members as against Defendant and awarding Plaintiff and the proposed Collective members the full amount of damages and liquidated damages available by law;

l.    Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute; and

m.    Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: July 28, 2023                    Respectfully Submitted,

*/s/ Jason J. Thompson*
Jason J. Thompson (pro hac vice
application forthcoming)
Albert J. Asciutto (pro hac vice
application forthcoming)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Phone: (248) 355-0300
Email: kstoops@sommerspc.com
Email: aasciutto@sommerspc.com

Bradley W. Butcher, Esq.
BUTCHER & ASSOCIATES
6830 Porto Fino Circle, Suite 2
Fort Meyers, Florida 33912
(239) 322-1615
bwb@b-a-law.com

*Attorneys for Plaintiff, the FLSA
Collective, and the Putative Class*